# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46366-1-II |
| Respondent, | |
| v. | |
| HAROLD SPENCER GEORGE, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. – Harold Spencer George appeals his jury trial convictions for four counts of second degree child rape, one count of second degree child molestation, and the jury's special verdict findings on the vulnerable victim aggravator on all five convictions.[1]  He argues that (1) the jury instructions did not require that each of the four acts be separate and distinct acts upon which the jurors could rely for each second degree child rape count,[2] (2) the evidence was insufficient to support the convictions or the jury's special verdict findings on the vulnerable victim aggravator, (3) the State elicited improper opinion testimony from the victim's father about

---

[1] The jury also found that each of the four second degree child rape offenses were "part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years manifested by multiple incidents over a prolonged period of time."  Clerk's Papers (CP) at 24-27.  George does not challenge this aggravating factor.

[2] As noted below, although George characterizes this as a unanimity argument, we construe this argument as a double jeopardy argument.

C.D.[3] being a victim of sexual abuse which evidence was irrelevant and unfairly prejudicial, and (4) he received ineffective assistance of counsel due to defense counsel's failure to (a) timely appear for court, (b) file a sentencing brief or argue mitigating factors at sentencing, (c) order transcripts, (d) present a defense or make an opening statement, and (e) interview witnesses. He also raises numerous issues in a Statement of Additional Grounds for Review[4] (SAG).[5]

We affirm the convictions, but we hold that the evidence was insufficient to support the jury's special verdict findings on the vulnerable victim aggravator. Accordingly, we remand and order the trial court to vacate the vulnerable victim findings. Because the record does not reveal whether the trial court would have imposed the same exceptional sentences based only on the remaining aggravating factor findings, we also remand for resentencing. *See State v. Weller*, 185 Wn. App. 913, 930-31, 344 P.3d 695, *review denied*, 183 Wn.2d 1010 (2015).

FACTS

I. BACKGROUND

In 2012 to 2013, 12-year-old C.D. and her family were friends with George, his wife, and his wife's son and daughter. C.D.'s best friend was George's step-daughter; C.D. met George

---

[3] Pursuant to General Order 2011-1, the name of the minor(s) will be indicated with initials. Gen. Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts/.
[4] RAP 10.10.

[5] These issues include: (1) credibility issues, (2) several additional ineffective assistance of trial counsel claims, (3) a claim of conflict of interest with trial counsel, (4) challenges to the trial court's denial of defense counsel's motion to withdraw, (5) ineffective assistance of appellate counsel claims, (6) C.D.'s father's testimony about his conversation with George's wife and the related limiting instruction, (7) vindictive prosecution and the amended information, (8) prosecutorial misconduct, (9) alleged trial court bias, and (10) C.D.'s reference to George's being jailed.

when his son dated C.D.'s older sister; the two families frequently spent time together at both homes; and George occasionally stayed overnight at C.D.'s home when he was having marital problems. C.D. also frequently spent weekends at George's home visiting his step-daughter.

On or about April 27, 2013, following a conversation with George's wife, C.D.'s father asked C.D. "if she had sex with [George]." 3 Verbatim Report of Proceedings (VRP) at 148. When C.D. disclosed the sexual abuse, her father called the sheriff's office. During the investigation that followed, C.D. described engaging in numerous sexual acts with George. A physical exam by Dr. Yolanda Duralde revealed a "transection of [C.D.'s] hymen" that was "consistent with penetrating trauma." 3 VRP at 181, 184.

## II. PROCEDURE

### A. CHARGES AND AMENDED CHARGES

In October 2013, the State charged George with four counts of second degree child rape (counts I-IV), and one count of second degree child molestation (count V). The information alleged that the second degree child rapes occurred between January 1, 2013 and April 27, 2013, and that the second degree child molestation occurred on or about December 25, 2012. The State did not allege any aggravating sentencing factors.

More than four months later, immediately before the jury selection started, the trial court granted the State's motion to amend the information to include two aggravating sentencing factors on each charge: (1) "multiple incidents of offenses per victim, or multiple penetrations, or multiple acts"; and (2) the victim was either "particularly vulnerable or incapable of resistance." Clerk's Papers (CP) at 12-15 (capitalization altered). The State also changed the dates of the second degree

child molestation charge to include December 24, 2012. Defense counsel did not object to the amendment.

B. DEFENSE COUNSEL'S MOTION TO WITHDRAW

A few days before the State amended the information, defense counsel advised the trial court that George had refused to see her and that he wanted her removed from the case. Defense counsel, who had also represented George on another case before a different judge, commented that she had recently been unavailable in that case because her child had been hospitalized, which caused her to become "way overbooked" in another court. 1 VRP at 5. George had apparently overheard the prosecutors and judge in the other case discussing his defense counsel, and after he had been found guilty in that other case, George was reluctant to continue with her as counsel in this matter. She asserted that her communication with George had broken down, that he had lost confidence in her abilities, and that the comments he heard in the other courtroom had further undermined his confidence in her. Defense counsel further stated that she was concerned George would not pay her for any additional work or expenses or reimburse her for expenses she had already incurred to prepare for this trial. Finally, she stated that she had not yet prepared a "trial memorandum" because she did not "put in any more work after Mr. George left [her] yesterday," and that if she continued as counsel, she would need a day to prepare a trial brief. 1 VRP at 8.

The trial court noted that (1) defense counsel also had been unable to attend a March 14 hearing in this case when her child was ill and the court had set the matter over to March 21, and (2) defense counsel had not appeared at the set-over hearing until after George had been returned to the jail. The trial court denied the motion to withdraw after finding that there was not a sufficient

4

breakdown in communication to justify defense counsel withdrawing and noted that it would not consider the "financial situation." 1 VRP at 13.

C. PRELIMINARY MATTERS

During pretrial, defense counsel advised the trial court of George's pending divorce and indicated that the defense theory was that George's estranged wife "orchestrat[ed]" the allegations, which apparently included not only the allegations in this case but also allegations that George had sexually abused his step-daughter. 2 VRP at 45. Defense counsel moved to suppress any testimony by George's wife about her contact with C.D.'s father, in which George's wife apparently told C.D.'s father that a neighbor had seen George with someone who might have been C.D. Defense counsel argued that any information about George's wife's conversation with C.D.'s father was hearsay and that if the trial court did not suppress this evidence, George would request a limiting instruction. 2 VRP at 54. Defense counsel also requested that the trial court disallow any questions about why George's wife reported this information to C.D.'s father.

The trial court granted the motion in part and limited George's wife's testimony to the fact that a neighbor had told her that she had seen George with a young female, to "explain the nature of the disclosure." 2 VRP at 58. The trial court also invited George to propose a limiting instruction.

Following this ruling, defense counsel reserved the right to call George's wife as a witness if the State did not call her. While discussing this issue, the trial court commented that defense counsel had not filed a witness list. Defense counsel responded that although there were "no direct witnesses," she may call George's wife to rebut C.D.'s testimony. 2 VRP at 62. Defense counsel reserved her opening statement.

D. STATE'S CASE

1. C.D.'s Testimony

C.D. testified that on Christmas morning in 2012, George was staying at her house and she was sleeping on the office floor with him; his step-son and his step-son's friend were also sleeping in this room. She awoke to George touching the "outside" of her vagina under her clothes with his hand; the two boys were still asleep. 3 VRP at 98. George touched her for 10 minutes, but she did not tell him to stop because she was "too drowsy to talk." 3 VRP at 98. Although her father and sister were also in the house, she did not tell them about this incident because she was scared.

C.D. then described (1) three specific acts of sexual penetration that occurred in a trailer behind George's house while C.D. and her family were attending a "campfire" party, 3 VRP at 99, (2) multiple acts of intercourse in George's house, (3) multiple acts of intercourse in George's garage, and (4) one act of intercourse in her bedroom. She testified that she first had intercourse with George in January or February following the Christmas incident.

C.D. also testified that her father had asked her about George after he had talked to George's wife. When her father asked her about George, she told him that George had been having sex with her. Her father called the police. C.D. denied having talked to George's wife about George.

On cross-examination and redirect, C.D. further testified that George's step-son had been drunk and passed out in a chair in the trailer when George first had sex with her. She stated that she had attempted to leave the trailer, but George was asleep near the exit so she could not leave.

Defense counsel attempted to impeach C.D. with a prior statement in which C.D. stated that during the Christmas incident George had just rubbed her leg and had never asserted that he

had touched her vagina. But the State rehabilitated C.D. by establishing that although she had told defense counsel that George's contact with her had started on her leg, she had also stated that his hand then "went up." 3 VRP at 137. C.D. clarified that she meant he had continued up her leg until he had touched her vagina.

2. C.D.'s Father's Testimony

C.D.'s father initially testified that although George had stayed in their home "a couple of times," he could not recall if George had stayed with the family on Christmas Eve in 2012. 3 VRP at 143. C.D.'s father later testified, however, that he was sure George had not spent that Christmas with them. C.D.'s father also "vaguely" recalled a campfire at George's home, but he testified that C.D. was not there.

C.D.'s father further testified that he learned about the sexual abuse around April 27, 2013, after George's wife came to his house and told him "something."[6] 3 VRP at 147. After his conversation with George's wife, he then asked C.D. if she had had sex with George. After she responded that George had been having sex with her, C.D.'s father did not ask her any more questions because he did not "want to know details." 3 VRP at 148. Instead, he immediately called the sheriff.

---

[6] Defense counsel later requested a limiting instruction, and the trial court gave the following limiting instruction:

> You heard testimony by [C.D.'s father] that he had a conversation with [George's wife]. That testimony is being admitted for the limited purpose of showing what caused [him] to speak with C.D. It should not be considered for any other purpose.

CP at 37 (Jury Instruction 6).

7

Following this testimony, the State asked him if it was fair to say that he did not want additional details about the incidents because he might not be able to control himself. C.D.'s father responded, "Yes, *my baby girl was a victim of child molestation*. If I find out any details, I'm not in control of myself at that point." 3 VRP at 149 (emphasis added). George did not object to the State's question or C.D.'s father's response.

C.D.'s father also testified that C.D. was in middle school and was in a special program, "like an LAP"[7] program, because she was "developmentally disabled."[8] He further testified that C.D. had been held back in third grade because she could not communicate and needed speech therapy. He also testified that her disability affected her ability to understand "[s]ome things" that would be obvious to others without additional explanation and that he often had to find different ways to explain things to her. 3 VRP at 145. For example, he stated that he would sometimes have to explain in detail the plot of a movie they were watching before she could understand it. He further testified that he often had to find different ways to explain things to her and that, although she sometimes functioned like a normal 14-year-old, she often functioned like a 9-year-old.[9]

---

[7] A Learning Assistance Program (LAP) is a state funded program for students struggling in basic skills such as reading and math.

[8] Defense counsel did not object to this testimony.

[9] In addition, Dr. Duralde also testified that when she had talked to C.D.'s father, he had expressed concern about C.D. because "[s]he's a little bit slow developmentally, and she had had speech therapy in the past." 3 VRP at 178. Dr. Duralde stated that C.D.'s father could not, however, "explain what it was exactly how she was slow, but she was getting special classes at school." 3 VRP at 178.

No. 46366-1-II

E. DEFENSE CASE

After the State rested, the trial court asked defense counsel if she wanted to make an opening statement since she had reserved her opening. Defense counsel stated that she wanted to, but she had to confer with George first about whether the defense would call his wife to testify.

After consulting George, defense counsel stated that the defense was not going to call any witnesses. The trial court then refused to allow defense counsel to make an opening statement.

F. JURY INSTRUCTIONS

The trial court provided the jury with separate to-convict instructions for each of the five charges (counts I-V). For the four second degree child rape charges (counts I-IV), the jury instructions were identical except for the count number in the first sentence. The trial court also instructed the jury:

> A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

CP at 38.

> In addition, instruction 13, the unanimity instruction, instructed the jury:

> The State alleges that the defendant committed acts of Rape of a Child in the Second Degree on multiple occasions. To convict the defendant on any count of Rape of a Child in the Second Degree, one particular act of Rape of a Child in the Second Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Rape of a Child in the Second Degree.

CP at 44. But neither the to-convict instructions nor the unanimity instruction specifically advised the jury that each count had to be based on a separate and distinct criminal act. George did not object to any of these instructions.

9

G.  CLOSING ARGUMENT

In its closing argument, the State discussed the to-convict instructions for the four charges of second degree child rape.  It argued that although the instructions were "identical," there were four charges because the State had "to prove each one of [these] elements on each four [sic] counts."  4 VRP at 235.  It then argued that C.D. had testified to the rapes "occur[ing] in four different locations," specifically, in the trailer behind his residence, in her bedroom, in George's garage, and in his house.  It also argued that because C.D. testified that George raped her multiple times in some of these locations, each of these individual rapes could also be the basis for a different count.

But the State emphasized that the jury had to be unanimous as to the act that constituted each charged offense:

> Now, one of the instructions I want to talk to you [sic] here is Instruction No. 13.  Instruction 13 is talking about the fact that I've charged four counts, the victim has described 25 counts.  When you, as jurors, need to deliberate and decide on this, you can pick which one of those you want to find beyond a reasonable doubt.  You just have to be unanimous that it's this incident.  So if you wanted to say the trailer is three separate incidents because it happened three separate times with gaps in between, then that could be Count I, II, and III.  As long as you're unanimous on each one of those, then that could be what you're deciding.  If you're saying, hey, we're going to take the trailer, her house, and defendant's house, defendant's garage, each one of those is a separate time, that's fine.  You, as jurors, get to decide that, as long as when you're deciding that, you're unanimous as to how you're going to decide each count coming out.
>
> What she described to you is 25 approximate counts; three times separately happening in the trailer.  She describes 12 times in the defendant's house.  She says about half are in the guest room, about half are in the defendant's room, and about ten times in the garage when she was brought over there to visit her friend . . . .  Regardless of how you decide, there are at least four counts, and there are way more than four counts here the defendant is guilty.  He repetitively raped [C.D.].

4 VRP at 237-38.

Defense counsel argued that (1) Dr. Duralde's testimony only showed that there was a rare tear, a "transection in the hymen," not what or who had caused this injury, 4 VRP at 245, (2) C.D.'s father's opinion was based solely on C.D.'s statements to him, (3) C.D.'s father had denied George stayed overnight with C.D.'s family on Christmas 2012, (4) C.D.'s father testified that on another occasion, although he recalled a "campfire" at George's residence, C.D. was not there that night, 4 VRP at 247, (5) C.D.'s testimony was not "believable," 4 VRP at 248-49, and (6) being held back a year in school, having a lisp, or being in a special program in school was not enough to prove C.D. was particularly vulnerable.

In rebuttal, the State responded that C.D.'s behaviors, such as not crying out during the rapes and not seeking help from the others who were in the room during some of the incidents, were understandable because she could have been scared and because she did not always function as a 12-year-old child would be expected to function. The State also argued that C.D.'s father could have been mistaken about whether George stayed over on Christmas 2012 because of his (C.D.'s father's) "24/7" work schedule; the State also noted that defense counsel had only asked about Christmas Day, not Christmas Eve. 4 VRP at 257.

H. VERDICT AND SENTENCING

The jury found George guilty of all five charges. As to all five offenses, the jury also found that George knew or should have known that C.D. was particularly vulnerable or incapable of resistance. As to the four second degree child rape offenses, the jury also found that those crimes were part of an ongoing pattern of sexual abuse of the same victim under 18 years of age manifested by multiple incidents over a prolonged period of time.

Defense counsel was ill and unable to attend the May 2, 2014 sentencing hearing; the trial court set the hearing over to May 9. On May 9, defense counsel sent standby counsel because she was in court on another case in another county. The trial court concluded that standby counsel was not properly prepared for the sentencing hearing, so it set the hearing over to the afternoon of May 12. On May 12, defense counsel appeared late. Defense counsel asked the trial court to not consider her scheduling issues when imposing the sentence; the trial court assured her that it would not.

Based on George's offender score of 9+ on each count, and the jury's special verdicts on the aggravating sentencing factors, the trial court imposed an exceptional sentence of 420 months to life on each of the second degree child rape convictions. It imposed a standard range sentence of 116 months on the child molestation conviction.[10] The trial court entered written findings of fact and conclusions of law on the jury's special verdict findings on the aggravating sentencing factors for the exceptional sentences. The trial court did not comment on the record or in its written findings as to whether it would have imposed the same exceptional sentences based solely on the "ongoing patterns of sexual abuse" aggravating factor findings.

George appeals his convictions and the jury's special verdict findings on the vulnerable victim aggravator.

## ANALYSIS

George argues that (1) the jury instructions for the second degree child rape charges did not clearly distinguish the acts upon which the jurors could rely for each count, (2) the evidence

---

[10] It ran the sentences on the convictions concurrent to each other, but it ran the 420 month minimum sentences on the rape convictions consecutive to the sentences imposed in another case.

was insufficient to support any of the convictions or the jury's vulnerable victim findings, (3) the State elicited improper opinion testimony and this evidence was irrelevant and unfairly prejudicial, and (4) he received ineffective assistance of counsel on several grounds. He raises additional issues in his SAG.

## I. DOUBLE JEOPARDY ISSUE

George argues that he was potentially denied unanimous jury verdicts on the second degree child rape charges (counts I-IV) because instruction 13 (the unanimity instruction) and the to-convict instructions for those counts alleged that the offenses occurred in the same time periods and failed to clearly distinguish the acts that the jury was to consider for each count.

Although George presents this argument as a "unanimity" issue, it is more properly characterized as a double jeopardy issue because his core argument is that, given the instructions here, there is a possibility that the jury could have convicted him of multiple counts of second degree child rape based on a single criminal act. *See State v. Mutch*, 171 Wn.2d 646, 661-66, 254 P.3d 803 (2011) (characterizing this same argument as a double jeopardy argument); *see also State v. Berg*, 147 Wn. App. 923, 930, 198 P.3d 529 (2008), *overruled in part by Mutch*, 171 Wn.2d at 663-64. Accordingly, we address this issue as a double jeopardy argument. Presuming, but not deciding, that this issue was preserved for review, this argument fails. *See* RAP 2.5(a).

## A. LEGAL STANDARDS

The double jeopardy clauses of the federal and state constitutions protect defendants from being "punished multiple times for the same offense." *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006); *see* U.S. Const. amend. V; Wash. Const. art. I, § 9. We review double jeopardy claims de novo. *Mutch*, 171 Wn.2d at 661-62.

When the State presents evidence of multiple acts that could constitute more than one of the crimes charged, the trial court should instruct the jury that each count must be based on a separate and distinct act. *Mutch*, 171 Wn.2d at 663. If the instructions do not inform the jury that each count must be based on a separate and distinct act, then we must determine whether the evidence, arguments, and instructions made the separate act requirements "'manifestly apparent to the jury.'" *Mutch*, 171 Wn.2d at 664 (emphasis omitted) (quoting *Berg*, 147 Wn. App. at 931).

B. No Double Jeopardy

This case is similar to *Mutch*. In *Mutch* our Supreme Court addressed whether jury instructions similar to those at issue here in that they failed to specifically advise the jury that each charged count arose from a "separate and distinct" act and whether this inadequacy created a risk that the jury could have convicted Mutch of five counts of rape based only on a single criminal act. *Mutch*, 171 Wn.2d at 662. Although the court determined that these instructions were inadequate, it clarified that this deficiency alone was insufficient to justify relief.[11] *Mutch*, 171 Wn.2d at 663-64. Instead, the court held that the deficient instructions must be examined in the context of the record as a whole to determine if Mutch was *actually subjected* to multiple punishments for the same offense. *Mutch*, 171 Wn.2d at 663-64.

---

[11] Distinguishing previous case law, the court noted that a showing that a defendant had *potentially* received multiple punishments for the same offense was not sufficient to establish that the convictions violated the rule against double jeopardy. *Mutch*, 171 Wn.2d at 662-63 (citing *State v. Carter*, 156 Wn. App. 561, 567, 234 P.3d 275 (2010), *overruled in part by Mutch*, 171 Wn.2d at 663-64; *Berg*, 147 Wn. App. at 934-35). Instead, the court held that the defendant has to establish, based on the record as a whole, that he or she was actually subjected to multiple punishments for the same offense. *Mutch*, 171 Wn.2d at 663.

The court in *Mutch* then held that given the charging information, the testimony, and the arguments in the case, it was "manifestly apparent" that these instructions "did not actually effect a double jeopardy violation." *Mutch*, 171 Wn.2d at 665. It specifically noted that (1) the information had charged Mutch with "five counts based on allegations that constituted five separate units of prosecution," (2) the victim "testified to five separate episodes of rape," and the focus at trial was not centered on the number of rapes but rather whether there was consent and the victim's credibility, (3) the jury was given five to-convict instructions, and (4) "[t]he State discussed all five episodes of rape in its arguments." *Mutch*, 171 Wn.2d at 665.

The facts here are strikingly similar to those in *Mutch*. The jury instructions were substantially similar to those in *Mutch*.[12] Thus, we agree that these instructions failed to specifically advise the jury that each charged count arose from a "separate and distinct" act, and created a *risk* that the jury could have convicted George of four counts of second degree child rape based only on a single criminal act. But, as in *Mutch*, an examination of the record as a whole fails to establish an *actual* double jeopardy violation.

First, the amended information alleged four counts of second degree child rape based on four separate units of prosecution. Second, C.D. testified to at least four separate episodes of rape, and the trial focused on C.D.'s credibility and reliability as a witness, not the number of incidents. Third, the jury was given separate to-convict instructions for each of the four counts of second degree child rape. And, fourth, perhaps most importantly, in its closing argument the State

---

[12] The instructions here are essentially identical to the instructions at issue in *Berg*. *Berg*, 147 Wn. App. at 934-35. The *Berg* court held that these instructions were inadequate because they potentially exposed the defendant to multiple punishments for the same offense. 147 Wn. App. at 935-37. The *Mutch* court did not question this analysis. *Mutch*, 171 Wn.2d at 662-63.

discussed each of the separate incidents of rape, related each incident to a separate charge, and never suggested that the jury could use the same incident to support more than one charge. Given this, we hold that the record as a whole made it manifestly apparent to the jury that each count represented a separate act, and George has not established that he was subjected to multiple punishments for a single criminal act. Accordingly, this argument fails.

## II. SUFFICIENCY ISSUES

George next argues that the evidence was insufficient to support the convictions or the vulnerable victim findings. We hold that the evidence is sufficient to support the convictions. But we further hold that the evidence was insufficient to support the vulnerable victim findings.

### A. STANDARD OF REVIEW

Evidence to support a conviction is sufficient if, when viewed in the light most favorable to the State, "any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). We apply this same standard when reviewing a jury's special verdict finding the existence of an aggravating sentencing factor. *State v. Chanthabouly*, 164 Wn. App. 104, 142-43, 262 P.3d 144 (2011). If the evidence is insufficient to support the conviction, we must reverse and remand for the trial court to vacate the conviction or enhancement and dismiss the charge or enhancement with prejudice. *Engel*, 166 Wn.2d at 581; *State v. DeVries*, 149 Wn.2d 842, 845, 72 P.3d 748 (2003).

### B. CONVICTIONS

George argues that "[a]lthough C.D. testified about various incidents where Mr. George put his penis in her vagina, there are insufficient details for the jury to find unanimously and

beyond a reasonable doubt that each incident occurred during the time specified."[13]  Br. of Appellant at 38-39 (citing 3 VRP at 93-115).  Thus, George appears to contend only that the State failed to prove the crimes occurred within the relevant charging periods.  We disagree.

The to-convict instructions on the second degree child rape charges required the jury to find that the rapes occurred between January 1, 2013 and April 27, 2013.  And the to-convict instruction on the second degree child molestation charge required the jury to find that the molestation occurred between December 24, 2012 and December 25, 2012.  C.D.'s testimony that (1) George touched her vagina when he stayed overnight with the family on Christmas Eve 2012, and (2) C.D.'s testimony that the first rapes occurred in January or early February 2013, and her father's testimony that he learned of the rapes on or about April 27, 2013, is sufficient to support the conclusion that each of the rapes occurred during the charged period.  Thus, George's challenge to the sufficiency of the evidence to support these convictions fails.

C.  VULNERABLE VICTIM FINDINGS

George next argues that the evidence is insufficient to support the jury's findings that C.D. was particularly vulnerable or incapable of resistance.  He asserts that the evidence was too vague to establish particular vulnerability and that there was no evidence that he was aware of C.D.'s developmental disability.  We agree that there was no evidence that George knew or should have known of C.D.'s developmental disability.

---

[13] In this same section of his brief, George also asserts that because the State failed to elect which act supported which second degree child rape charge, it is impossible to distinguish the four charges.  We address this issue above as a double jeopardy argument.

No. 46366-1-II

To prove the aggravating sentencing factor that a victim is particularly vulnerable or incapable of resistance, the State must prove that the defendant "knew or should have known" of that vulnerability or incapacity. RCW 9.94A.535(3)(b). The special verdict instructions in this case reflected this requirement.

The evidence at trial established that C.D. was developmentally disabled. Specifically, her father testified that C.D. had been held back in third grade because she could not communicate and needed speech therapy; that she sometimes had difficulty understanding things most people can understand without explanation; and that, although she sometimes acted like a normal 12-year-old child, she sometimes functioned at the level of a 9-year-old. Given these facts, a reasonable jury could have concluded that C.D.'s developmental issues made her more vulnerable than a normal 12-year-old child.[14]

But the record contains no evidence from which a reasonable juror could conclude that George knew or should have known about C.D.'s developmental disability. There was no evidence that anyone told George about C.D.'s disability. And, although C.D. spent time with George and his family, there was nothing in the record describing how obvious her developmental disability was in everyday interactions rather than in an academic or family setting. Nor is there anything apparent in the record suggesting that C.D.'s developmental disability was obvious when she

_____

[14] We defer to the jury's factual determinations regarding witness testimony. *State v. Camarillo* 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

18

testified. Accordingly, we hold that the evidence was insufficient to support the vulnerable victim findings.[15]

### III. C.D.'s Father's Testimony

George next argues that the State elicited improper witness opinion testimony from C.D's father which testimony was irrelevant under ER 402 and unfairly prejudicial under ER 403. After C.D.'s father testified that C.D. disclosed the sexual abuse to him, the State asked him why he did not want to know the details and he responded that it was because his daughter was "a victim of child molestation." 3 VRP at 149. Because George did not object to this testimony on any ground, George must first show that these issues are reviewable under RAP 2.5(a)(3) as manifest constitutional errors.

We are not generally required to consider issues raised for the first time on appeal. RAP 2.5(a); *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). George may, however, raise a claim of error for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Kalebaugh*, 183 Wn.2d at 583. To establish that the alleged error was a manifest error affecting a constitutional right, George must (1) identify a constitutional error and (2) show how the alleged error actually affected his rights at trial. *Kalebaugh*, 183 Wn.2d at 583. If the error is a manifest constitutional error, "the error is nonetheless subject to harmless error review." *State v. Sublett*, 176 Wn.2d 58, 78, 292 P.3d 715 (2012) (citing *State v. O'Hara*, 167 Wn.2d 91, 98-99, 217 P.3d 756 (2009)).

---

[15] In his SAG, George also claims that the evidence was insufficient to support the vulnerable victim findings because there was no evidence that C.D. had a developmental disability and that some of the evidence supporting this factor was "hearsay." SAG at 17. Because we reverse the vulnerable victim findings, we do not address these SAG claims.

George argues that the State's questions and C.D.'s father's testimony were improper because the reason C.D.'s father did not seek additional details from C.D. was not relevant under ER 402 and was unfairly prejudicial under ER 403. But ER 402 and 403 arguments are not of constitutional magnitude, so we decline to review them. *In re Pers. Restraint of Duncan*, 167 Wn.2d 398, 408, 219 P.3d 666 (2009); *State v. Elmore*, 139 Wn.2d 250, 283, 985 P.2d 289 (1999) (citing *State v. Chase*, 59 Wn. App. 501, 508, 799 P.2d 272 (1990)).

In contrast, vouching for the credibility of a witness, which is essentially opinion testimony on an ultimate issue of fact that should be reserved for the jury, can violate a defendant's constitutional right to a jury trial because it is essentially opinion testimony on an ultimate issue of fact that should be reserved for the jury. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). But "[a]dmission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error." *State v. Kirkman*, 159 Wn.2d 918, 936, 155 P.3d 125, 130 (2007). Our Supreme Court has held that a "nearly explicit statement by the witness that the witness believed the accusing victim" is required before a manifest error can be found. *Kirkman*, 159 Wn.2d at 936. But even assuming that the question and statement here were sufficiently explicit, George still does not show that this was a manifest constitutional error because "manifestness" requires the appellant to establish actual prejudice and George fails to meet this standard. *Kalebaugh*, 183 Wn.2d at 584; *Kirkman*, 159 Wn. 2d at 935.

George argues that the State's question and C.D.'s father's response were the equivalent of C.D.'s father testifying that he believed George was guilty. Although this would not be an unreasonable characterization of the testimony, the fact that C.D.'s father immediately contacted the police and took C.D. to the hospital for an examination conveyed essentially the same message

to the jury. Because this question and testimony conveyed no more of an opinion than other facts that were already before the jury, George does not show that they caused any actual prejudice.[16]

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

George next raises six ineffective assistance of counsel claims. These arguments fail.

### A. STANDARD OF REVIEW

To demonstrate ineffective assistance of counsel, a defendant must show that (1) defense counsel's representation was deficient and (2) the deficient performance prejudiced the defendant. *State v. Hicks*, 163 Wn.2d 477, 486, 181 P.3d 831 (2008) (acknowledging that this state has adopted the standards from *Strickland v. Wash.*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Representation is deficient if it falls below an objective standard of reasonableness based on consideration of all the circumstances. *Hicks*, 163 Wn.2d at 486; *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P .2d 1251 (1995). Prejudice occurs when but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Brousseau*, 172 Wn.2d 331, 352, 259 P.3d 209 (2011). If a party fails to satisfy either prong of the test for ineffective assistance of counsel, we need not consider both prongs. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). Counsel's reasonable tactical decisions cannot be the basis of an ineffective assistance of counsel claim. *See State v. Grier*, 171 Wn.2d 17, 44, 246 P.3d 1260 (2011), *cert. denied*, ___ U.S. ___, 135 S. Ct. 153 (2014).

---

[16] George also argues that he received ineffective assistance of counsel because defense counsel failed to object to the State's question or C.D.'s father's response. This argument also fails because George does not establish prejudice. *State v. Hicks*, 163 Wn.2d 477, 486, 181 P.3d 831 (2008) (to establish ineffective assistance of counsel, appellant must show both deficient performance and resulting prejudice).

B.  NO INEFFECTIVE ASSISTANCE OF COUNSEL

First, George argues that defense counsel provided ineffective assistance of counsel because she repeatedly missed or was late to court hearings.  Although the record shows that counsel either missed or was late to several hearings, nothing in the record shows that any prejudice resulted—in fact, the trial court merely continued the hearings and held them when counsel was present.  Because George does not establish any prejudice based on counsel's failure to appear or appearing late for hearings, this argument fails.[17]

Second, George argues that defense counsel failed to provide a sentencing brief or any argument at sentencing to support a lesser sentence.  Although the record shows that defense counsel did not file a sentencing brief, the trial court allowed defense counsel to present her sentencing recommendation orally, so her failure to file a sentencing brief was not prejudicial.  Additionally, even though defense counsel did not present information about George's "life" or present any mitigating factors, George does not say what specific information could have been helpful to him and there is no such information in the record before us.  *McFarland*, 127 Wn.2d at 335.  Because George has not established any prejudice on this record, this argument fails.

Third, George argues that defense counsel was unprepared for trial because she did not timely obtain or authenticate the transcripts for the pretrial interviews with C.D. or C.D.'s father because of the cost.  But the record shows that defense counsel obtained and used these transcripts

---

[17] We note that the trial court also specifically mentioned that it was not considering any of defense counsel's absences or scheduling issues at sentencing and it complimented her on how she had tried the case.

to attempt to impeach C.D. and C.D.'s father. Thus, George does not show how any delay in obtaining or authenticating the transcripts was prejudicial and this argument fails.

Fourth, George argues that defense counsel was unprepared for trial because she did not file a trial brief and had not prepared any motions in limine. George does not specify how the trial brief would have altered the outcome, nor does he discuss what potentially successful motions in limine defense counsel should have made. Accordingly, this argument also fails.

Fifth, George argues that defense counsel did not present a defense or make an opening statement, despite having reserved her opening statement. Defense counsel presented a defense based on the evidence at trial. She argued in closing argument that C.D.'s story was not believable given the nature of her testimony, the contradictory testimony from C.D.'s father, and the failure of the forensic evidence to tie George to any of the offenses. If there was additional evidence or testimony available that could have supported defense counsel's arguments or supported a different defense, that evidence is outside the record and we cannot consider it. *McFarland*, 127 Wn.2d at 335. Furthermore, the record shows that it was a reasonable tactical decision for defense counsel to reserve her opening statement until after the State presented its evidence because defense counsel was unsure which witnesses she would present to rebut the State's case until after the State rested and she had the opportunity to confer with George. *See In re Pers. Restraint of Davis*, 152 Wn.2d 647, 715. 101 P.3d 1 (2004) (defense counsel's reservation of right to make opening statement and ultimately deciding not to present one was a reasonable tactical decision). Accordingly, this argument fails.

Sixth, George argues that defense counsel failed to investigate witnesses, specifically George's step-son and the step-son's friend, or seek a missing witness instruction. But whether

counsel attempted to locate these witnesses or whether they were equally available to both parties[18] is outside the record, so this argument fails. *McFarland*, 127 Wn.2d at 335.

## V. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

George also presents several pro se arguments in his SAG.

### A. CREDIBILITY AND CREDIBILITY RELATED ISSUES

George appears to contend that C.D.'s testimony was inconsistent and was not credible or reliable.[19] Credibility issues are reserved for the trier of fact and we will not review them on appeal. *State v. Camarillo* 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

George also contends that the record shows the State "coached" C.D. He asserts that the fact C.D. asked counsel to "rephrase" a question demonstrates she was coached. It is pure speculation that C.D. was coached by the State. This argument fails.

### B. ADDITIONAL INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

George raises additional claims of ineffective assistance of defense counsel.

### 1. Lack of Competency Hearing

George contends that he received ineffective assistance of counsel because defense counsel did not request a competency hearing or argue any mental health mitigating factors at sentencing. Because the record does not contain any information relevant to George's alleged competency or

---

[18] The missing witness doctrine applies only if the potential testimony is material and not cumulative and if the missing witness is particularly under the control of one party rather than being equally available to both parties. *State v. Montgomery*, 163 Wn.2d 577, 598-99, 183 P.3d 267 (2008).

[19] George also mentions child hearsay statements. But his argument focuses on C.D.'s testimony, not any hearsay statements. Thus, we do not address this issue as a child-hearsay issue.

mental health issues, this argument fails on this record. To the extent George is referring to matters outside the record, we cannot address them on direct appeal. *McFarland*, 127 Wn.2d at 335.

2. Failure to Object to State's Closing Argument

George further contends that defense counsel failed to object to portions of the State's closing argument. He appears to refer to the State's rebuttal argument addressing the incident in the trailer.

C.D. testified that the first rape occurred in a trailer when she, her sister, and her father were at George's home for a gathering involving a campfire. But her father testified that he "vaguely" recalled attending a gathering involving a campfire at George's home, that C.D. was not at that gathering, and that he would not have left her alone with George if she had been there. 3 VRP at 161. Apparently based on that testimony, defense counsel argued in closing argument, "[C.D.'s father] also testified that there was no campfire that Mr. George was at alone with [C.D.]." 4 VRP at 247.

In response to this argument, the State argued:

> One of the things [defense] counsel pointed out as well. [C.D.'s father] said that he never her left [sic] alone at the campfire. I'm not even sure that when counsel asked that question he knew what campfire they were talking about or when, but what [C.D.'s father] did tell you is that every weekend or about every weekend [C.D.] would spend the weekend over at her friend [George's step-daughter's] house because they are best friends. That makes sense. Best friends do that.

> Obviously, the time of the trailer she's describing one of the times she's over there on a weekend, and [C.D.'s father] says that she was over there and spent the night on the weekend. So there was obvious times that she would have been at the house based on that, which corroborates what [C.D.] was telling you; that she was over there, that she had interactions with the defendant.

4 VRP at 256. Defense counsel did not object to this argument.

George appears to contend that defense counsel should have objected to this portion of the State's rebuttal argument because (1) it was not an accurate representation of the evidence, and (2) the assertion that C.D. was mistaken and the campfire gathering could have been a different one than C.D.'s father attended was a "false statement" that amounted to vouching for C.D.'s credibility. We disagree.

First, defense counsel's assertion that C.D.'s father testified there was no campfire gathering at which George was alone with C.D. was not accurate. C.D.'s father did not testify that there was never any campfire gathering at which C.D was alone with George. Instead, C.D.'s father testified that he vaguely recalled a campfire gathering at George's home, but C.D. was not present at *that* event and he would not have left her alone with George if she had been there. Thus, the State's rebuttal argument stating that it was not sure when C.D.'s counsel asked C.D.'s father whether C.D. had ever been alone with George at a campfire gathering was an accurate reflection of the record.

Second, the State's argument that C.D. and her father could have been talking about two different events was a reasonable inference from the record based on the evidence given the frequency of C.D.'s visits to George's residence to see her friend. And counsel are permitted latitude to argue reasonable inferences from the record in their closing arguments. *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). Thus, any objection to this testimony on these grounds would have failed. Accordingly, this argument has no merit.

George further contends that defense counsel should have objected to the State's argument that C.D.'s inconsistent statements should not affect her credibility and its attempts to "discredit" C.D.'s father's testimony. SAG at 33. He appears to refer to the State's attempts to explain some

of C.D.'s behaviors, such as not crying out during the rapes, and to explain why C.D.'s father's testimony might contradict some of C.D.'s testimony. These were all reasonable arguments based on the evidence. Accordingly, this argument fails.

3. Failure to Investigate

George also contends that defense counsel failed to investigate several matters. The specific matters George alleges defense counsel did not investigate are either unclear, are outside the record, or relate to issues we have addressed above. Accordingly, we do not further address this argument. *See* RAP 10.10(c) (SAG must inform the court of the nature and occurrence of the alleged errors); *McFarland*, 127 Wn.2d at 335.

4. Failures to Object

George further argues that defense counsel failed to object throughout the trial. We disagree.

First, citing to several pages of the report of proceedings, George contends defense counsel failed to object to the State's leading questions. Although George cites to several pages of the verbatim report of proceedings, each of these pages contain several questions and George does not specify which questions he claims are leading. Accordingly, we do not address this issue further. RAP 10.10(c).

Second, George argues that defense counsel's failure to object to C.D.'s testimony that the sex stopped hurting because George was in jail demonstrates ineffective assistance of counsel. But defense counsel successfully moved to strike this testimony, so this claim fails.

Third, George contends that defense counsel failed to object to C.D.'s father's testimony that C.D. was in an "LAP program" because she was developmentally disabled. SAG at 32.

George argues that defense counsel should have objected on the basis of lack of foundation.[20] To establish ineffective assistance of counsel for failure to object, George must show that the objection would have been sustained. *See McFarland*, 127 Wn.2d at 335. There is nothing in the record that shows that such an objection would have been successful.[21] Accordingly, this argument fails. Furthermore, to the extent George is referring to matters outside the record, we cannot address them on direct appeal. *McFarland*, 127 Wn.2d at 335.

Fourth, George appears to contend that defense counsel failed to object to the fact Dr. Duralde somehow considered his "criminal history" when making her report about the condition of C.D.'s hymen. SAG at 32. There is nothing in the record suggesting that Dr. Duralde considered George's criminal history. This argument fails.[22] Furthermore, to the extent George is referring to matters outside the record, we cannot address them on direct appeal. *McFarland*, 127 Wn.2d at 335.

---

[20] He also argues that defense counsel should have objected to this testimony because C.D.'s father "misstated what that type of program is." SAG at 32. But he cites to an appendix that is not part of the trial court record to support this argument. Because we do not consider evidence outside the trial court record, we decline to address this issue. *McFarland*, 127 Wn.2d at 335.

[21] Because it is not part of the record, we do not consider the document that George attached to his SAG. *McFarland*, 127 Wn.2d at 335.

[22] Again, we do not consider George's appendices because they are not part of the record. *McFarland*, 127 Wn.2d at 335.

28

5. Failure to Admit Exhibits

George claims that defense counsel failed to admit certain "crucial exhibits" that the jury should have been allowed to review. SAG at 33. First, he cites to the trial court's oral instruction advising the jury that exhibits that are admitted will be available to them in the jury room, apparently to suggest that this instruction demonstrates there were exhibits that should have been available to the jury during deliberations. But this instruction merely informs the jury that there may be exhibits which are admitted which will be available to them during deliberations. It does not establish that the jury was not allowed to view any of the admitted exhibits during deliberations.

Second, he cites to the jury's question during deliberations asking to see "the transcript of [C.D.'s father's] testimony," to imply that defense counsel should have ensured this document was admitted. VRP (Apr. 2, 2014) at 3. But this transcript was used only to impeach C.D.'s father, and the transcript was not admissible as substantive evidence. *See* ER 613. He fails to prove his counsel was deficient in not moving to admit the transcript.

6. Failure to Challenge State's Argument at Sentencing

George next contends that defense counsel failed to challenge some unspecified statements by the State, which he asserts are "unfounded," during the sentencing hearing. SAG at 33. George does not identify the exact statements he is challenging; accordingly, we do not consider this issue. RAP 10.10(c).

7. Failure to Object to Error on Verdict Form

Finally, George further contends that defense counsel failed to challenge an error on a verdict form. George cites to a portion of the sentencing hearing in which the trial court notes that

a proposed written finding of fact did not accurately reflect the jury's special verdict findings on an aggravator and that the written finding of fact needed to be corrected. This does not show that there was any error in the jury's special verdict form and this argument fails.

Accordingly, all of George's additional ineffective assistance of trial counsel claims either fail or are outside the record.

C. CONFLICT OF INTEREST

George also contends that defense counsel had a conflict of interest, apparently because she was not being paid, that resulted in her failing to properly represent him. Although the record shows that defense counsel was concerned about being paid, there is nothing in the record demonstrating that this negatively impacted her representation. Accordingly, this argument fails.

D. DENIAL OF COUNSEL'S MOTION TO WITHDRAW

George also contends that the trial court should have allowed defense counsel to withdraw because she had a "conflict of interest due to prior trial representation" and due to her concern about not being paid. SAG at 23. He alleges these factors adversely affected her representation.[23]

Again, there is nothing in the record suggesting that defense counsel's financial concerns or her prior representation of George adversely affected her representation in this case. Thus, George does not show that the trial court should have allowed defense counsel to withdraw on these grounds. Additionally, we hold that the trial court did not abuse its discretion[24] in denying

---

[23] George refers us to a letter from defense counsel that he has attached to his SAG. We do not consider this letter because it is not part of the trial court record. *McFarland*, 127 Wn.2d at 335.

[24] We review a trial court's denial of a motion to substitute counsel for abuse of discretion. *State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004).

counsel's motion to withdraw because appointing new counsel on the eve of trial would clearly have caused considerable delay and inconvenience to the jury, witnesses, prosecution, and the court. Furthermore, to the extent George refers to matters outside the record, we cannot address them on direct appeal. *McFarland*, 127 Wn.2d at 335.

E. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

George next contends that he received ineffective assistance of appellate counsel because appellate counsel failed (1) to argue that defense counsel had failed to investigate the case and (2) to send George the transcripts he required to prepare his SAG. We disagree as he fails to show that appellate counsel was deficient or any prejudice.

First, the allegation that defense counsel did not investigate the case relies on matters outside the record. Because we will only consider the trial court record on appeal, appellate counsel could not have successfully raised these issues on appeal, and George does not show deficient performance or prejudice.

Second, our record shows that, although there was some delay, George received the trial transcripts and that we granted an extension of time and accepted George's SAG, which clearly cites the transcripts. Because George received the transcripts and was able to file his SAG, he cannot show prejudice. Accordingly, these arguments fail.

F. REFERENCES TO GEORGE'S WIFE'S CONTACT WITH C.D.'S FATHER AND RELATED LIMITING INSTRUCTION

George next challenges the admission of any reference to his wife's conversation with C.D.'s father.[25] George claims that his wife's conversation with C.D.'s father was hearsay; this evidence implied that his wife told C.D.'s father about his sexual abuse of C.D.; and that the limiting instruction no. 6 given by the trial court related to this evidence[26] did not cure any prejudice; and the limiting instruction changed the State's burden of proof. We disagree.

First, C.D.'s father did not testify at trial about the content of his conversation with George's wife. Thus, there was no hearsay testimony about George's wife's conversation with C.D.'s father presented at trial.

Second, C.D.'s father testified that his conversation with George's wife was his reason for asking C.D. about her contact with George. C.D.'s father also testified that no one had said anything to him about C.D. having sex with George until he spoke to C.D. George speculates that

---

[25] In a preliminary hearing, George moved to suppress any testimony by his wife about her contact with C.D.'s father and a conversation with a neighbor that prompted this conversation. Defense counsel stated that George's wife would testify that she talked to C.D.'s father after a neighbor had informed her that she (the neighbor) had seen George walking with a young female who was "likely [C.D.]." 2 VRP at 52. Defense counsel argued that any testimony about this event by George's wife was inadmissible hearsay. The trial court ruled that George's wife could testify about what the neighbor told her and that she (the wife) shared this information with George. George's wife did not testify. As noted above, C.D.'s father testified only that he spoke to C.D. after George's wife came to his house and told him "something." 3 VRP at 147.

[26] The limiting instruction stated:

> You heard testimony by [C.D.'s father] that he had a conversation with [George's wife]. That testimony is being admitted for the limited purpose of showing what caused [him] to speak with C.D. It should not be considered for any other purpose.

CP at 37 (Instruction No. 6).

his wife told C.D.'s father about possible sex abuse during their conversation. Accordingly, this argument fails.

Third, George implies the limiting instruction, instruction 6, was inadequate and failed to cure the alleged "hearsay" error. This argument fails because defense counsel proposed the instruction, so any error was invited and we will not consider this argument further. *State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990).

Fourth, George also appears to contend that defense counsel provided ineffective assistance of counsel by proposing instruction 6 because the instruction "states that what caused [C.D.'s father] to call the police is that he heard that the defendant/Appellant was walking down the street which no reasonable person would call the police for such an incident unless something flagrant was also said or known and this clearly prejudiced the defendant." SAG at 22. But George mischaracterizes the evidence and the limiting instruction because the jury never heard about the content of the conversation and the limiting instruction did not disclose the content of the conversation. Accordingly, this argument fails.

Fifth, George claims that the limiting instruction was insufficient to cure the "[i]nflammatory [e]ffect" caused by the testimony about the conversation. SAG at 22 (emphasis omitted). We disagree. As discussed above, the testimony never revealed the content of the conversation, and C.D.'s father testified that no one had mentioned any sexual abuse. These facts limited the potentially inflammatory aspect of this evidence, and we hold that the limiting instruction cured any potentially remaining inflammatory effect.

Sixth, George is asserting that the limiting instruction relieved the State of its burden of establishing the elements of the crimes beyond a reasonable doubt. But the instruction made no comment on the burden of proof. Accordingly, this argument fails.[27]

G. VINDICTIVE PROSECUTION/AMENDED INFORMATION

George next contends that (1) he was subject to vindictive prosecution because the State amended the charges to include the aggravating sentencing factors and changed the charging period to include December 24, 2012 on the second degree child molestation charge after he refused to plead guilty to the original charges, (2) the trial court erred in granting the State's motion to amend the charges, and (3) his counsel was deficient in failing to object to the motion to amend. These arguments fail.

"'Prosecutorial vindictiveness is [the] intentional filing of a more serious crime in retaliation for a defendant's lawful exercise of a procedural right.'" *State v. Bonisisio*, 92 Wn. App. 783, 790, 964 P.2d 1222 (1998) (alteration in original, internal quotation marks omitted) (quoting *State v. Lee*, 69 Wn. App. 31, 35, 847 P.2d 25 (1993)). This does not, however, preclude the prosecutor from increasing an initial charge if a fully informed and represented defendant refuses to plead guilty to the original charge, unless the defendant can "'prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do.'" *Bonisisio*, 92 Wn. App. at 790-91 (quoting *U. S. v. Goodwin*, 457 U.S. 368, 384, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982)). When the change in charges occurs

---

[27] In this same argument section, George also make a reference to the "prosecutor[']s purportedly improper remarks." SAG at 22. This argument does not appear to relate to any issues raised in this part of George's SAG.

before trial, the defendant must prove either actual vindictiveness, or a reasonable likelihood of vindictiveness that will give rise to a presumption of vindictiveness. *Bonisisio*, 92 Wn. App. at 791. The record here contains no information on the plea process, thus George fails to carry this burden and this argument fails.[28]

George claims that the amendment to the charge substantially prejudiced his rights, but he does not specify how. Because he does not specify how he was prejudiced by the amendment and the record does not establish any prejudice, this argument fails.

In support of his claim that defense counsel should have objected to the amendment because it "severely affected the plea-negotiations," George cites to defense counsel's request that the trial court bifurcate the trial and the fact finding required by the jury on the aggravated sentencing factors. SAG at 31. This request is not relevant to the plea negotiations, nor is there anything else in the record regarding plea negotiations. Thus, the record does not support George's assertion that the amended information affected any plea negotiations and this argument fails.

H. PROSECUTORIAL MISCONDUCT CLAIMS

George next contends that the State engaged in prosecutorial misconduct on several grounds. These arguments fail.

First, George asserts that the prosecutor asked the witnesses leading questions. A leading question suggests the desired answer; that a question can be freely answered in the affirmative or

---

[28] To the extent George is arguing that the lack of evidence supporting the vulnerable victim finding demonstrates a reasonable likelihood of vindictiveness, we disagree. Additionally, the record clearly shows that the State amended the charging period on the second degree child molestation charge to conform to the evidence disclosed during discovery.

a negative is generally not a leading question. *State v. Scott*, 20 Wn.2d 696, 698-99, 149 P.2d 152 (1944). George argues that the State asked C.D. leading questions when it asked her (1) whether George had removed his penis from her vagina when shifting between the sexual acts that took place in the trailer, (2) whether George left her shirt on during one of their intimate contacts, and (3) whether and how George had touched her during the Christmas 2012 incident. SAG at 13. These questions called for a yes or no answers; they did not suggest the desired answer; they were not leading questions; and the State did not engage in misconduct by asking them.

Second, George claims that the State presented false testimony which assumes that C.D.'s testimony was false, which is a credibility determination. As discussed above, credibility issues are reserved for the trier of fact and we will not review them on appeal. *Camarillo*, 115 Wn.2d at 71.

Third, George asserts that the prosecutor, in opposing defense counsel's motion to withdraw, made "misrepresentation[s]" to the court when the prosecutor argued that sufficient grounds to withdraw did not exist and that withdrawal would be prejudicial. SAG at 13, 26. George does not show that either of these representations involved any misrepresentation. Accordingly, this argument fails.

Fourth, the State objected to defense counsel's closing argument, "At this point, you might be tempted to think why would [C.D.] lie?" 4 VRP at 248-49. The trial court sustained the objection and asked defense counsel to rephrase her argument, which she did. George argues that this objection constitutes prosecutorial misconduct. But this objection was reasonable, the trial court sustained the objection, and it does not amount to prosecutorial misconduct.

Fifth, George asserts that the State made several false statements during closing argument when it argued that a lisp is a learning disability.[29] George mischaracterizes this argument. Although the State mentioned that C.D. had a lisp, it argued that this lisp was one of *several* facts that suggested C.D. may have a learning disability. This argument was not improper.

Sixth, George contends that the prosecutor made a false statement and suborned perjury when it stated that C.D.'s father never left her alone at the campfire "ever" because he testified that C.D. was never present at the campfire "'ever.'" SAG at 16 (citing 4 VRP at 256). George mischaracterizes this argument. During closing, the State pointed out that the correct evidence the jury should consider was C.D.'s father's testimony that C.D. was not present at the campfire gathering he attended at George's residence. This argument does not amount to prosecutorial misconduct.

Seventh, George claims that the State improperly vouched for C.D.'s credibility when it suggested in closing argument that the trailer incident took place on a different weekend when C.D. spent the weekend not during a campfire. We disagree. This was a reasonable inference from the record and did not amount to prosecutorial misconduct.

---

[29] George also appears to contend that defense counsel's failure to object to these same statements during closing argument amounted to ineffective assistance of counsel. Because these arguments were not improper, defense counsel's failure to object was not ineffective assistance of counsel.

Finally, George claims that reversal is warranted because of cumulative prosecutorial misconduct. Because we do not find any prosecutorial misconduct, his cumulative prosecutorial misconduct claim also fails.

I. TRIAL COURT BIAS

George also contends that the trial court was biased. Again, we disagree.

George first asserts that the trial court's denial of counsel's motion to withdraw demonstrated bias. As we discuss above, the trial court did not abuse its discretion in denying defense counsel's motion to withdraw. Accordingly, this ruling is not evidence of judicial bias.

George next asserts that the trial court presumed that George's divorce from his wife "was due to the nature of the crimes siding with the State." SAG at 35. George appears to refer to the trial court's ruling that the issue of his pending divorce was relevant to bias and was admissible should his wife testify. Although the trial court had ruled that the couple's divorce was admissible to show possible bias, it deferred ruling on whether the parties could introduce evidence of the reason George's wife filed for divorce, which could have included George's other sex offenses and allegations of sexual abuse of his step-daughter. The court stated that if the parties wanted to introduce such evidence, it would need to hear more specific argument. Nothing in this part of the record suggests any judicial bias or that the trial court presumed the divorce was caused by

George's other sex offenses; the trial court only stated that it would need more information should the parties want to introduce any such evidence. Accordingly, George does not establish judicial bias on this ground.

George further asserts that the trial court demonstrated bias by "violati[ng]" the motion in limine limiting the testimony about George's wife's contact with C.D.'s father. SAG at 35. The trial court was asked to rule on whether the jury could hear testimony about the nature of the conversation between C.D.'s father and George's wife, and it gave defense counsel the choice of allowing testimony about the "nature of the conversation" or giving the jury a limiting instruction. 3 VRP at 157. Defense counsel chose the limiting instruction. This is not evidence of bias.

George next appears to assert that the trial court demonstrated bias by giving the jury limiting instruction number 6, discussed in the previous paragraph. Giving a jury instruction offered by the defense is not evidence of judicial bias.

George asserts that the trial court demonstrated bias by calling a 10 minute recess after the State's closing argument. Calling a recess to provide the jury, the parties, and the court a break before proceeding with the defense closing argument is common practice and is not evidence of judicial bias.

George further asserts that the trial court demonstrated bias by upholding an objection by the State that was unfounded. As we note above, the State objected when defense counsel argued, "At this point, you might be tempted to think why would [C.D.] lie?" 4 VRP at 248-49. The trial court sustained the objection and asked defense counsel to rephrase her argument, which she did. This is a reasonable objection to argument, which the trial court sustained. It is not evidence of judicial bias.

George next asserts that the trial court exhibited bias by not being present to respond to a jury question. The record shows that another judge addressed a jury question while the jury was deliberating because the trial court judge was presiding in another hearing in drug court. The trial court judge was simply not available. Allowing a second judge to fill in so that deliberations could continue is not evidence of judicial bias.

J.  C.D.'S COMMENT ABOUT GEORGE GOING TO JAIL

Finally, George claims that C.D.'s testimony, in which she stated that the sex stopped hurting because George went to jail, violated the trial court's order in limine and constituted grounds for a mistrial. But George fails to identify what portion of the court's order in limine was violated or how. Additionally, defense counsel objected to this testimony, and the trial court instructed the jury to disregard that answer. We presume the jury follow's the court's instructions. *State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990). George does not show that this testimony was prejudicial or grounds for a mistrial.

## CONCLUSION

We affirm George's convictions, but we hold that the evidence was insufficient to support the jury's special verdict findings on the vulnerable victim aggravator. Accordingly, we remand and order the trial court to vacate the vulnerable victim findings. Because the record does not

reveal whether the trial court would have imposed the same exceptional sentences based only on the remaining aggravating factor findings, we also remand for resentencing. *See Weller*, 185 Wn. App. at 930-31.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, C.J.

WORSWICK, J.